Andrew K. WHITEHEAD, a minor, By and Through his parents and next friends, Dr. Keith D. WHITEHEAD and Nikole Whitehead; and Dr. Keith D. Whitehead and Nikole Whitehead, for themselves, Plaintiffs,

v.

SCHOOL BOARD FOR HILLSBOR-OUGH COUNTY, FLORIDA, Defendant.

No. 94–241–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

March 19, 1996.

Laura Lee Whiteside, Laura L. Whiteside, P.A., Tampa, FL, for Andrew K. Whitehead, Keith D. Whitehead and Nikole Whitehead.

Gregory Alan Hearing, Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, Walter Crosby Few, Few & Ayala, Tampa, FL, for School Board for Hillsborough County.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for W. Crosby Few.

### ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ON DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' REQUEST FOR JURY TRIAL

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant's Motion for Partial Summary Judgment (Docket No. 39) and Plaintiffs' response (Docket Nos. 42 & 43), and on Defendant's Motion to Strike Plaintiffs' Request for Jury Trial (Docket No. 38), and Plaintiffs' response (Docket No. 41).

### I. FACTS

Andrew K. Whitehead, Plaintiff, is a child who resides in Hillsborough County, Florida, and attends Mintz Elementary School in Hillsborough County, Florida. His date of birth is August 30, 1987. Dr. Keith D. Whitehead and Nikole Whitehead are Andrew's parents. Plaintiff, Andrew Whitehead, was born with Down syndrome and has disabilities related to that condition, and therefore, he is a child with disabilities as defined in the Individuals with Disabilities Education Act, 20 U.S.C. § 1401(a)(1)(A) (hereinafter "IDEA").

Mintz Elementary School is a public school operated by Defendant, School Board for Hillsborough County, Florida. Defendant receives financial assistance from the United States federal government which assistance is made available through IDEA. 20 U.S.C. § 1400–1415. Consequently, Defendant is subject to the provisions of IDEA and is required to provide a free appropriate public education, as defined in 20 U.S.C. § 1401(a)(18), to all children with disabilities.

Further, as a state agency that has accepted federal financial assistance in respect to programs at Mintz Elementary School, Defendant is prohibited under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereinafter "§ 504"), from discriminating against persons with disabilities.

In 1992 and 1993, a dispute arose between Plaintiffs and Defendant over Defendant's provision of special educational services to Plaintiff. The dispute culminated in the parties' participation in a due process hearing pursuant to 20 U.S.C. § 1415(b)(2), before Mr. James E. Bradwell, a Hearing Officer with the State of Florida Division of Administrative Hearings. The hearing was held on September 24, 1993 and September 28, 1993. On January 11, 1994, Mr. Bradwell issued a Final Order on the issues pending before him in the due process hearing, which issues included the appropriate level and manner of special educational services provided by Defendant to Plaintiff. In addition, Mr. Bradwell identified numerous violations of law by Defendant, including: bad faith (Final Order ¶ 67), deprivation of Andrew's right to a free appropriate public education (Final Order ¶ 68), discrimination against Andrew due to his handicap (Final Order ¶ 79), and retaliation against Plaintiffs (Final Order ¶ 80).

On February 7, 1994, Defendant appealed the portion of the Final Order dealing with the Hearing Officer's determination that Plaintiffs were entitled to an award of attorney's fees to the State of Florida Second District Court of Appeal. On February 14, 1994, Plaintiffs cross-appealed the Final Order asserting that the Hearing Officer erred in failing to award them a greater amount of compensatory damages. On November 10, 1994, the Second District entered an Order dismissing Defendant's appeal, stating that it was from a non-appealable, non-final Order. In the same Order, the Second District dismissed Plaintiffs' cross-appeal stating that it did not present a justiciable issue.

On February 10, 1994, Plaintiffs filed this lawsuit seeking to enforce the provisions of IDEA and § 504, (Docket No. 1). In Count I of the Complaint, Plaintiffs seek an award of attorneys fees under IDEA, alleging that they were prevailing parties in the due process hearing held in September, 1993, before Hearing Officer Bradwell. In Count II of the Complaint, Plaintiffs seek compensatory and/or punitive damages under IDEA and attorneys' fees and costs associated with the pursuit of IDEA damages. Finally, in Count III of the Complaint, Plaintiffs seek an award of compensatory and/or punitive damages under § 504 for alleged intentional discrimination and retaliatory conduct. Plaintiffs also seek an award of attorneys' fees and costs for pursuit of § 504 damages.

## II. SUMMARY JUDGMENT

■ Under Fed.R.Civ.P. 56(c), summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plain language of Fed.R.Civ.P. 56(c) has been interpreted by the Supreme Court to mandate entry of summary judgment after adequate time for discovery, against a party who fails to establish the existence of an element essential to the party's case and on which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In this case, Defendant has asked for summary judgment pursuant to Fed.R.Civ.P. 56 on Counts II and III of Plaintiffs' Complaint. Defendant asserts that Plaintiffs' request for compensatory and punitive damages under IDEA and § 504 is improper since neither compensatory nor punitive damages are remedies available under IDEA and § 504. If damage remedies are not available under IDEA and § 504, Plaintiffs cannot proceed on Counts II and III of their complaint since the availability of damages under IDEA and § 504 is an element that is essential to their case.

### A. Count II: Claim for damages under IDEA

The stated purpose of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–1415, is

to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.

20 U.S.C. § 1400(c). To guarantee the manifestation of the aforementioned purpose, any state or local agency receiving federal assistance must, in accordance with the requirements of 20 U.S.C. § 1415, establish and maintain "procedural safeguards." 20 U.S.C. § 1415(a). These procedures include not only the right of the parents to participate in the development of an "individualized education program" (IEP), but also, the requirement that parents be given an opportunity to contest any matter that relates to the provision of a "free appropriate education" for the child. 20 U.S.C. § 1415(b). If the parents of a handicapped child decide to bring a complaint, they must be given an "impartial due process hearing." 20 U.S.C. § 1415(b)(2). Upon completion of the administrative process, "any party aggrieved by the findings and decision ... shall have the right to bring a civil action with respect to the complaint" in either state or federal court which shall "receive the records of the administrative proceedings ... and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).

The issue in this case is whether "appropriate" relief includes the recovery of compensatory and punitive damages which Plaintiffs request in Count II of their complaint. If such damages are not available under IDEA, Plaintiffs have failed to establish an essential element of their case, and under Fed.R.Civ.P. 56(c) and the standard set forth in *Celotex*, Defendant is entitled to summary judgment on Count II of Plaintiffs' complaint.

■ In *Powell v. Defore*, 699 F.2d 1078, 1080 (11th Cir.1983), the court noted that

"[a]s a general rule, compensatory damages are not available under the [IDEA]" (citing *Anderson v. Thompson*, 658 F.2d 1205, 1208–11 (7th Cir.1981)). In *Anderson*, the court examined the language, legislative history, and goals of IDEA, in concluding that, "damages, however limited, are not within the scope of relief authorized by [§ 1415(e)(2)], absent exceptional circumstances." 658 F.2d at 1210–11. First, according to the *Anderson* court, the statutory language and the context in which the words appear demonstrate that Congress did not intend to "create any type of educational malpractice action," but instead, "designed a multi-level procedure through which an aggrieved parent can ultimately seek an 'appropriate' program decision from the district court." *Id.* at 1211.

Second, the court examined the legislative history of IDEA and determined that the phrase, "all appropriate relief," was intended by Congress to emphasize that a district judge could "adopt the program offered by the school district or the program advocated by the parents, or that he could ... devise any program which in his view would ensure an appropriate individualized educational program." *Id.* at 1211–12. The court noted that the Senate Conference Report makes no mention of damages, nor is there "other evidence of any explicit intent to establish a damage remedy." *Id.* at 1212. The "overriding congressional concern was meeting the needs of handicapped children," and thus, the "elaborate system of procedural safeguards" listed in § 1415 was thought to be the best method of assuring that "the result would ultimately be an appropriate educational program." *Id.* at 1212; *see Miener v. Missouri*, 673 F.2d 969, 979 (8th Cir.1982) (holding that "appropriate" relief was "generally intended to be restricted to injunctive relief, within which the district judge would have wide latitude to fashion an individualized educational program for the child").

Finally, in examining the goals of IDEA, the *Anderson* court did not find that it was "good policy" to require that a school district pay damages for a good faith effort to provide a child with an appropriate education if it later turns out that a different program-

ming decision should have been made. *Anderson,* 658 F.2d at 1213. The court explained that, "in as new and undeveloped a field as special education, there is a need for flexibility and experimentation in programming for handicapped children." *Id.* at 1213. The court felt that if school officials were in constant fear of being exposed to monetary liability for incorrect placement decisions, officials would hesitate to implement innovative educational reforms. *Id.* Ultimately, implying a general damage remedy would "hinder rather than help the very children for whose benefit the statute was enacted." *Id.*

While the *Anderson* court determined that IDEA was not intended to provide a general damage remedy, the court discussed two exceptional circumstances in which a limited damage remedy might be appropriate: (1) where the school district's placement of the child would endanger the child's physical health; and (2) where the school district "acted in bad faith by failing to comply with the procedural provisions of [IDEA] in an egregious fashion." *Id.* at 1213–14. The court believed that in these two situations Congress "would have intended that parents take action to provide the necessary services for their children without awaiting the outcome of lengthy administrative and judicial proceedings." *Id.* at 1214. A limited damage award is then appropriate for these two exceptional circumstances because parents should "be compensated for the costs of obtaining those services that the school district was required to provide." *Id.* The court explicitly stated that the only appropriate money damages for violations of IDEA that fall within the parameters of these two exceptional circumstances would be the parents' costs of obtaining substitute services that the school district was required to provide, and "in no event can we imagine that tort liability damages were intended." *Id.* at 1214 n. 12.

In *Manecke v. School Board of Pinellas County,* 762 F.2d 912, 915 n. 2 (11th Cir. 1985), the Eleventh Circuit noted that the *Anderson* test for reimbursement, referred to in its earlier decision in *Powell,* was no longer good law. *See Powell v. Defore,* 699 F.2d 1078, 1081 (11th Cir.1983). Instead, the Eleventh Circuit looked to *Burlington School Comm. v. Department of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d. 385 (1985), where the Supreme Court held that IDEA authorizes a reviewing court "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such a placement, rather than a proposed IEP, is proper under the Act." *Manecke,* 762 F.2d at 915 n. 2 (citing *Burlington,* 471 U.S. at 369, 105 S.Ct. at 2002) (explaining that reimbursement is appropriate in this circumstance because it furthers the principal purpose of the Act in providing handicapped children with a "free appropriate public education ... designed to meet their unique needs"). The *Burlington* Court emphasized that court-ordered reimbursement is not the equivalent of damages, but rather, reimbursement merely requires that the school "pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington,* 471 U.S. at 370–71, 105 S.Ct. at 2002–03. Therefore, while the Eleventh Circuit in *Manecke* disagreed with its previous use of the *Anderson* test in *Powell,* it saw no reason in light of *Burlington,* to question the ultimate result reached in *Powell,* which was a dismissal of the plaintiffs' claim for tort-type damages under IDEA.

Whether the tests in *Anderson* or *Burlington* are applied, the only appropriate damages for violations of IDEA are reimbursement type damages that compensate the parents of a handicapped child for the failure of the school to provide a "free appropriate education" as mandated by IDEA. Even though this case would probably fall under the second exception of *Anderson,* because there is evidence that Defendant acted in bad faith (Final Order, ¶ 67), only a limited damage award is available in order to compensate parents for costs of services that the school district should have provided. *See Anderson,* 658 F.2d at 1214. Likewise, although a different test was applied in *Burlington,* the court felt that the appropriate damage award for a school's failure to develop a proper IEP would be reimbursement for the costs of substitute educational services that the parents were forced to pro-

vide. *See Burlington,* 471 U.S. at 370–71, 105 S.Ct. at 2002–03. Since the explicit purpose of IDEA is to assure the establishment of appropriate public educational opportunities for handicapped children, and not to serve as a source from which individuals may collect tort-type damages, the proper remedy for a violation of IDEA is to implement an appropriate education plan for the child and compensate parents for providing services that the school should have provided. 20 U.S.C. § 1400(c). *See Anderson,* 658 F.2d at 1213 (noting that a damage remedy is not consistent with the goals of the statute because "educational programs for the handicapped will suffer if school officials, for fear of exposing themselves to monetary liability for incorrect placements, hesitate to implement innovative educational reforms").

In Count II of the complaint, Plaintiffs allege that under the Final Order, "monetary damages were not awarded or were insufficient to compensate Plaintiffs for the harm they suffered as a proximate result of Defendant's violations of law." (Docket No. 1, ¶ 18). As a result, Plaintiffs request, "damages against the Defendant for bad faith failure to comply with its obligations under IDEA." (Docket No. 1, ¶ 16). According to this initial request, it is not clear whether Plaintiffs are requesting additional cost damages because they were inadequately compensated under the Final Order, or whether Plaintiffs are requesting tort type damages for the harm they suffered from Defendant's actions. However, in Plaintiffs' "Amended Complaint for Attorney Fees, Costs, Damages and Demand for Jury Trial," (Docket No. 30), Plaintiffs clarify their request for damages by alleging that the Final Order,

awarded the Whiteheads reimbursement for the expenses they incurred providing education to Andrew that should have been provided by the School Board and obtaining evaluations to determine his educational regression and need for compensatory therapy. Finally, it awarded the Whiteheads attorney fees and costs incurred in connection with the administrative proceeding, and reserved jurisdiction to determine the amount of fees and costs that would be awarded. It did not award dam-

ages beyond reimbursing the Whiteheads their out-of-pocket expenses.

(Docket No. 30, ¶ 12).

It is clear from the Amended Complaint, that the Final Order awarded Plaintiffs reimbursement for all of their costs incurred due to Defendant's failure to comply with the requirements of IDEA. Therefore, since Plaintiffs have been reimbursed for their expenses, and have not alleged that they have been insufficiently compensated, the request for damages in Count II of the complaint is a request for compensatory and punitive damages. Since the damages Plaintiffs request are not available remedies under IDEA, Count II does not withstand Defendant's summary judgment motion.

**B. Count III: Claim for damages under § 504 for intentional discrimination**

■ Section 504 of the Rehabilitation Act provides in pertinent part:

No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794. Unlike IDEA, "§ 504 does not require affirmative action on behalf of handicapped persons, but only the absence of discrimination against those persons." *Smith v. Robinson,* 468 U.S. 992, 1018, 104 S.Ct. 3457, 3471, 82 L.Ed.2d 746 (1984).

■ The Supreme Court, without expressing an opinion on the matter, noted that "courts generally agree that damages are available under § 504. . . ." *Smith,* 468 U.S. at 1020 n. 24, 104 S.Ct. at 3472 n. 24. However, some confusion has been created in this circuit by the interplay between § 504 and § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits discrimination on the basis of race, color, or national origin in federally-assisted programs. *Manecke v. School Board of Pinellas County,* 762 F.2d 912, 922 n. 8 (11th Cir. 1985). In 1978, Congress amended the Rehabilitation Act and, pursuant to § 505(a)(2), 29 U.S.C. § 794a(a)(2), made available the

"remedies, procedures, and rights" found in Title VI to anyone discriminated against in violation of § 504 of the Act. *Manecke*, 762 F.2d at 922 n. 8. The district court in *Manecke v. School Board of Pinellas County*, 553 F.Supp. 787 (M.D.Fla.1982), consulted circuit precedent on Title VI relief and concluded that since there is no private right of damages under Title VI, there is similarly no right of damages under § 504. *Manecke*, 553 F.Supp. at 790, *aff'd in part rev'd in part*, 762 F.2d 912 (11th Cir.1985). In reaching this conclusion, the district court in *Manecke* specifically looked to *Drayden v. Needville Indep. School Dist.*, 642 F.2d 129, 133 (5th Cir.1981), where the Fifth Circuit noted that Title VI relief is limited to cessation of discriminatory activity, and back pay or other losses are not recoverable.

On appeal, the Eleventh Circuit in *Manecke* affirmed the district court's dismissal of the plaintiffs' claim for damages under § 504 on the basis that the plaintiffs did not allege sufficient facts to state a claim under § 504. However, without reaching a holding on the issue of whether damages are available under § 504, the Eleventh Circuit thoroughly discussed the issue of the availability of damages under § 504. *Manecke*, 762 F.2d at 922 n. 8. The circuit court explained that after the district court's dismissal of the claim for damages under § 504, the Eleventh Circuit decided *Powell v. Defore*, 699 F.2d 1078 (11th Cir.1983). In *Powell*, although the court refused to award damages on the basis that they were unable to discern any unlawful discrimination, the court noted that "section 504 has been interpreted to provide a cause of action for compensatory damages." *Powell*, 699 F.2d at 1082. In determining that § 504 has been found to provide damages, the Eleventh Circuit in *Powell* cited *Miener v. Missouri*, 673 F.2d 969, 979 (8th Cir.1982), where the Eighth Circuit held that damages are available under § 504 as a necessary remedy where discrimination against a qualified handicapped individual is proven.

Furthermore, the Eleventh Circuit in *Manecke* noted that four months after they decided *Powell*, the Supreme Court handed down *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 607 n. 27, 103 S.Ct.

3221, 3235 n. 27, 77 L.Ed.2d 866 (1983), where at least five Justices would not allow compensatory relief to a private plaintiff under Title VI absent proof of discriminatory intent. Then, in *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 104 · S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Court explicitly applied its decision in *Guardians* regarding Title VI remedies to a § 504 claim for back pay. The Court reasoned that based on its decision in *Guardians*, where all the Justices agreed that a private plaintiff under Title VI could recover back pay as a remedy for intentional discrimination, the same analysis should be applied to an analysis of § 504 remedies. *Consolidated Rail*, 465 U.S. at 631, 104 S.Ct. at 1252, 79 L.Ed.2d at 574. The Court concluded that "§ 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay." *Id.* However, the Court did not render an opinion as to the extent to which money damages are an available remedy under § 504. *Id.*

The Eleventh Circuit in *Manecke*, concluded its discussion of whether damages are available under § 504 by referring to the Fifth Circuit, which reads *Guardians* as fully applicable in the context of § 504. *Manecke*, 762 F.2d at 922 n. 8. The *Manecke* court referred to the Fifth Circuit's decision in *Marvin H. v. Austin Indep. School Dist.*, 714 F.2d 1348, 1357 (5th Cir.1983), where the court held that an action for damages under § 504 must fail in the absence of intentional discrimination. Furthermore, the *Manecke* court cited to *Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 264 (5th Cir.1984), where the Fifth Circuit dismissed a claim for damages under § 504 where the plaintiff failed to allege "that the School Board intended to place his children in inappropriate classes or that his children's placement manifested discriminatory animus."

The Fourth, Eight and Ninth Circuits, as well as the Fifth Circuit hold that damages are available for intentional discrimination under § 504. · *See Pandazides v. Virginia Board of Educ.*, 13 F.3d 823, 832 (4th Cir. 1994) (holding that "suits under § 504 provide the plaintiff a full panoply of legal remedies"); *Miener v. Missouri*, 673 F.2d 969,

978–979 (8th Cir.1982), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1983) (holding that since "administrative remedies are inadequate to vindicate individual rights and that Congress could not have expected the individual plaintiff to be made whole through administrative procedures ... damages are available under § 504 as a necessary remedy for discrimination against an otherwise qualified handicapped individual"); *Smith v. Barton,* 914 F.2d 1330, 1337 (9th Cir.1989) (noting "money damages are available in the Ninth Circuit for violations of § 504").

In Count III of Plaintiffs' Complaint, Plaintiffs allege that Defendant engaged in intentional discrimination against Andrew Whitehead based on his handicap, in violation of the Rehabilitation Act. The facts upon which Plaintiffs rely for this allegation are set forth in the Final Order. The Final Order specifically states that Defendant discriminated against Andrew Whitehead based on his handicap, in violation of the Rehabilitation Act (Final Order, ¶ 79).

Following *Powell* and the Supreme Court's treatment of damages under Title VI, this Court holds that damages are available under § 504 for intentional discrimination. Therefore, since damages are available and Plaintiffs have sufficiently pled and supported their allegation of intentional discrimination in violation of § 504, Plaintiffs' Count III for damages under the Rehabilitation Act survives Defendant's motion for summary judgment.

## C. Count III: Claim for damages under § 504 for retaliatory conduct

In Count III of Plaintiffs' complaint, Plaintiffs allege that Defendants engaged in retaliatory conduct towards Plaintiffs in violation of the Rehabilitation Act. Plaintiffs, Keith D. Whitehead and Nikole Whitehead, do not allege that they were discriminated against based on a disability, but rather that they suffered retaliation from Defendant when they attempted to assert their rights under § 504 by filing a complaint against the school for discriminating against their son due to his handicap.

The regulation implementing § 504 of the Rehabilitation Act is found at 34 C.F.R. 104.61. It incorporates the prohibition against retaliation contained in the regulation implementing Title VI, found at 34 C.F.R. 100.7(e). The regulation provides, in pertinent part, that recipients of federal financial assistance, shall not:

> ... intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [the statute or the Title VI regulation,] or because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the Title VI regulation.]

34 C.F.R. 100.7(e)

■ Under the regulation, retaliatory acts are prohibited against persons who complain of unlawful discrimination in violation of § 504 on behalf of a handicapped individual. There is no limitation under the regulation that retaliatory acts are only prohibited against the handicapped individual on whose behalf the § 504 complaint is being raised. Therefore, persons who claim to suffer from retaliation do not need to show that they are an "otherwise qualified handicapped individual" as required under § 504 for a claim of unlawful discrimination because of a handicap. *See* 29 U.S.C. § 794.

■ The Final Order in this case specifically stated that retaliatory conduct is prohibited "against persons who have complained of discrimination." (Final Order, ¶ 78). Accordingly, finding that a prima facie case of retaliation had been made and that Defendant could not articulate a nondiscriminatory reason for its actions, the Hearing Officer ordered that, "[t]he [Defendant] is prohibited from engaging in retaliatory conduct towards Andrew Whitehead **and his parents.**" (Final Order). Therefore, since damages are allowed under § 504 for intentional discrimination, there is no cognizable reason why damages should not be allowed for retaliatory conduct in violation of the regulation implementing § 504 when parents attempt to assert their rights under § 504.

## III. JURY TRIAL

The Seventh Amendment provides that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." This has been interpreted to extend the right to jury trial to all suits, whether at common law or arising under federal legislation, where legal rights are involved:

The phrase "common law" found in this clause, is used in contradistinction to equity.... By common law, [the Framers of the Amendment] meant ... not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity ... whatever might be the peculiar form which they may assume to settle legal rights.

*Pandazides v. Virginia Board of Education,* 13 F.3d 823, 828 (4th Cir.1994) (citing *Parsons v. Bedford,* 3 Pet. 433, 446–47, 7 L.Ed. 732 (1830) (Story, J.)). Thus, the Seventh Amendment "does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974).

In *Pandazides,* the court held that, in an appropriate case where the plaintiff requests proper damage remedies in the complaint, "a jury trial is constitutionally mandated under § 504." 13 F.3d at 832. The court reached this holding after having determined that "suits under § 504 provide the plaintiff a full panoply of legal remedies." 13 F.3d at 832.

Although § 504 is silent as to the availability of a jury trial, Plaintiffs bringing a claim for compensatory and punitive damages under § 504 are constitutionally entitled to a jury trial because "[m]oney damages are 'the traditional form of relief offered in the courts of law.'" *Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990) (emphasizing that "plaintiffs are not entitled to a jury trial merely because they brought claims under § 504 ... [because] § 504 itself does not provide such a right ... rather, plaintiffs' right to jury trial arises from the Seventh Amendment because they seek [compensatory money damages] that [are] legal in nature") (citing *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)).

In this case, Defendant has asked the court to strike Plaintiffs' request for a jury trial. In their complaint, Plaintiffs' request a jury trial on Count II for their claim that they are entitled to compensatory and punitive damages under IDEA, and on Count III for their claim that they are entitled to compensatory and punitive damages under § 504. Plaintiffs' request for a jury trial on their claim for damages under IDEA is moot since that claim was dismissed in this order on summary judgment because legal damages are not an available remedy under IDEA. Furthermore, since only injunctive relief and equitable damages are allowed under IDEA, remedies for which a jury trial is not available under the Seventh Amendment, Plaintiffs' request for a jury trial on Count II would be denied.

However, under § 504, not only are Plaintiffs entitled to legal damages, but they properly requested legal damage relief in their complaint by asking for compensatory and punitive damages. Therefore, under the Seventh Amendment, Plaintiffs are entitled to a jury trial on Count III since they seek relief that is legal in nature.

The Court, having considered all the arguments of the parties, is convinced that the Motion for Partial Summary Judgment should be denied in part and granted in part, and the Motion to Strike Plaintiffs' request for jury trial should be denied in part and granted in part. Accordingly, it is

**ORDERED** that the motion for partial summary judgment (Docket No. 39) in favor of Defendant, School Board for Hillsborough County, Florida, **be granted** as it relates to Count II of Plaintiffs' complaint for damages under IDEA and **be denied** as it relates to

**1524**

Count III of Plaintiffs' complaint for damages under § 504, and the motion to strike Plaintiffs' request for jury trial (Docket No. 38) **be granted** as it relates to Plaintiffs' claim for damages under the IDEA and **be denied** as it relates to Plaintiffs' claim for damages under § 504.

**DONE and ORDERED.**