[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-16642

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2002
THOMAS K. KAHN
CLERK

D.C. No. 97-00019-CV-FTM-25D

SCHOOL BOARD OF COLLIER COUNTY, FLORIDA,

Plaintiff-Counter-defendant-Appellee,

versus

"K.C.", A minor by and through her parents, SWC and KAC,
S.W.C., individually, and as parents and next friends of K.C.,
a minor, and K.A.C.,

Defendants-Appellants, Counter-claimants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 14, 2002)**

Before EDMONDSON, HILL and LAY[*], Circuit Judges.

LAY, Circuit Judge:

_____

[*]Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

K.C., a minor, by and through her parents S.W.C. and K.A.C. (K.C.) appeals from the district court's final judgment in favor of the School Board of Collier County (Board). Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (IDEA), and corresponding Florida laws, Fla. Stat. § 230.23(4)(m); Fla. Admin. Code Ann. r. 6A-6.0311, the Board is required to provide K.C. with a free appropriate public education (FAPE). In order to achieve an "appropriate" education, the school and parents develop an individualized education program (IEP) together. Either party may request a due process hearing if they cannot agree on the contents of the IEP. Pursuant to Fla. Stat. § 230.23(4)(m)(5), the due process hearing is conducted by an administrative law judge (ALJ) from the Division of Administrative Hearings of the Department of Management Services. In the present case, the district court vacated the ALJ's decision in favor of K.C. On appeal, K.C. argues the district court erred by (1) allowing the Board to supplement the record with expert testimony, (2) denying K.C.'s request to utilize an expert witness, and (3) vacating the ALJ's decision.

## I. Background

We briefly review the facts, which are thoroughly documented in nearly eighty pages of findings by the ALJ and well summarized by the district court.

Since K.C. began attending Collier County Public Schools, she has been classified as an "exceptional student" with learning disabilities. Accordingly, the Board must provide "special instruction, classes, and services." Fla. Stat. § 230.23(4)(m)(2). For example, in preparation for K.C.'s transition to the fifth grade, the Board acquired a special portable classroom and had it customized to meet K.C.'s special needs. Because K.C.'s transition to sixth grade would entail a change in locations, planning began as early as January 1996. An IEP meeting was held in May 1996 and continued at a June 7, 1996, meeting that resulted in the completion of an IEP.

K.C. started school on August 26, 1996. Things began badly and K.C.'s mother kept K.C. from school for three days and requested a meeting with key school personnel. K.C.'s mother complained about the state of the portable classroom and the absence of certain equipment and furnishings. K.C. returned to school on Tuesday, September 3, 1996. Over the next two weeks, K.C.'s teachers noted some signs of improvement in her behavior. Her teachers, however, had trouble getting K.C. to work at school and her mother aggravated the problem by helping K.C. complete "in-class" assignments at home.

On Friday morning, September 13, 1996, K.C. found a nail outside the portable classroom. She subsequently threatened students and staff with the nail, stuck her

3

teacher in the finger, and hit and kicked several staff members. The incident culminated with K.C. calling her mother and reporting that her teachers were trying to murder her.

K.C.'s parents kept her from school for the next three days. After a meeting with the principal, she was formally suspended for seven additional days. A new IEP was developed at a meeting held September 26, 1996, and K.C. returned to school on September 30, 1996. K.C. was less compliant than before the incident and her mother regularly attended school with her. K.C.'s mother was generally disrespectful of K.C.'s teachers and their attempts at instruction, effectively taking over K.C.'s classroom teaching. K.C.'s parents removed her from school on October 7, 1996, and she never returned.

## II. Procedural History

On October 9, 1996, both the Board and K.C.'s parents requested a due process hearing relating to the June and September 1996 IEPs. That hearing was held over the course of several days in October and November 1996. The ALJ's final order found the June and September IEPs were procedurally inadequate, denying K.C. a FAPE. The ALJ ordered the preparation and implementation of a new IEP. The Board then filed the present action in the federal district court for the Middle District of Florida

4

claiming the IEPs in question provided K.C. with a FAPE and seeking a judgment vacating the ALJ's final order.[1]

In August 1997, the district court entered an accelerated scheduling order setting January 15, 1998, and February 1, 1998, as the cut-off dates for discovery and dispositive motions, respectively. No date was set for disclosure of experts. In February 1998, the Board moved to submit additional evidence. Because of the district court's decision to modify the course of proceedings,[2] the motion was denied without prejudice so the Board could amend it, specifying the need and relevance of any additional evidence it sought to submit. In May 1998, the district court entered an order refusing to extend the discovery deadline without the agreement of the parties. In March 1999, the district court granted the Board's amended motion to submit additional evidence and denied K.C.'s motion to strike Dr. David Rostetter's affidavit.[3] On April 30, 1999, K.C. filed a motion to submit the testimony of an expert to rebut the Board's expert testimony. The court denied that motion.

---

[1]K.C. also filed a civil action in the district court seeking attorney's fees, costs, damages, and equitable relief based on the ALJ's findings.

[2]The district court made some decisions about the order in which the consolidated cases comprising this controversy would be resolved, thus restricting the scope of the trial.

[3]The district court allowed the Board to supplement the record with only one expert and denied the Board's request to add any additional documentary evidence.

Trial was held on June 24 and 25, 1999. The district court vacated the ALJ's final order and entered a judgment in favor of the Board. This appeal followed.

### III. Discussion

**A. Evidentiary Rulings**

This court has previously set forth the standard of review as follows:

> We review a district court's ruling on the admissibility of evidence for abuse of discretion, and evidentiary rulings will be overturned only if the moving party establishes that the ruling resulted in a "substantial prejudicial effect." When applying an abuse of discretion standard, "we must affirm unless we at least determine that the district court has made a 'clear error of judgment,' or has applied an incorrect legal standard."

Piamba Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1305 (11th Cir. 1999) (internal citations omitted); see also Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998).

*1. Dr. Rostetter's Affidavit and Testimony*

K.C. claims the district court committed reversible error by allowing the Board to supplement the record with the affidavit and expert testimony of Dr. Rostetter. We disagree. The district court is to conduct a de novo review of the ALJ's findings, and "IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate." Weiss v. Sch. Bd., 141 F.3d 990, 991-92 (11th Cir. 1998); see 20 U.S.C. § 1415(i)(2)(B). "The determination of what is 'additional' evidence must be left to the discretion of the trial court which must be

6

careful not to allow such evidence to change the character of the hearing from one of *review* to a *trial* de novo." Walker County Sch. Dist. v. Bennett, 203 F.3d 1293, 1298 (11th Cir. 2000) (quoting Town of Burlington v. Dep't of Educ., 736 F.2d 773, 791 (1st Cir. 1984)) (emphasis added).

K.C. argues the Board failed to comply with Fed. R. Civ. P. 26(a)(2)(C) and 26(e). The Board correctly notes the district court never set an expert witness disclosure deadline other than the Rule 26 requirement that expert witnesses must be disclosed at least ninety days prior to trial. See Fed. R. Civ. P. 26(a)(2). Since the Board disclosed its desire and intent to use Dr. Rostetter as an expert witness over a year prior to trial, it cannot be said to have violated Rule 26.

K.C. also argues the district court failed to meet the "Walker standards" for what additional evidence a court may accept in civil actions brought under the IDEA.[4] K.C. contends the Board did not provide a sufficient basis for supplementing the record, failing to demonstrate why Dr. Rostetter did not testify at the administrative hearing. K.C. contends Dr. Rostetter's testimony was cumulative of testimony

---

[4]Although Walker County School District was decided nearly eight months after the district court's decision in the present case, it endorsed the standard articulated by the First Circuit in Town of Burlington. See Walker County, 203 F.3d at 1299 ("We agree with this well reasoned resolution of the issue by the First Circuit . . . ."). In the present case, the district court relied heavily on Town of Burlington in deciding whether to grant the Board's motion.

previously presented at the administrative hearing. These arguments are without merit.

When initially presented with the Board's motion to supplement the record, the district court denied it and required an amended motion setting forth the evidence the Board wished to present and how it would assist the court. The Board did so, providing a "solid justification" for introducing additional evidence. Cf. Roland M. v. Concord Sch. Comm., 910 F.2d 983, 996-97 (1st Cir. 1990) (concluding that deliberately withholding witnesses because of disdain for the administrative process failed as a solid justification). The district court expressly considered the Town of Burlington court's analysis of what additional evidence should be considered. It noted additional expert testimony may be helpful in clarifying certain aspects of the case and that legitimate reasons -- such as cost -- often exist for not presenting all expert testimony before a state agency. Town of Burlington and Walker County declined to adopt a rule prohibiting a court from considering testimony from those "who did, or could have, testified before the administrative hearing." Town of Burlington, 736 F.2d at 790; Walker County, 203 F.3d at 1298. We find no abuse of discretion in allowing this limited additional evidence.

   *2. K.C.'s Motion to Supplement the Record*

8

K.C. also claims the district court erred by denying her motion to supplement the record. This motion was made on April 30, 1999, more than a year after the close of discovery and the identification of Dr. Rostetter as a supplementary witness for the Board. Although K.C. had "opposed Plaintiff's motion to add an expert, at no time prior to the eve of trial did [she] request that the Court allow [her] leave to designate an expert of [her] own." Sch. Bd. v. K.C., No. 97-19-CIV-FTM-25D (M.D. Fla. June 21, 1999) (Order denying K.C.'s Motion To Add Expert). "[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997). Thus, we cannot say the decision to refuse K.C.'s untimely motion constituted reversible error.[5]

## B. Free Appropriate Public Education

The Supreme Court has formulated a two-part test in analyzing whether a FAPE was provided in cases arising under the IDEA. The court must determine: (1) whether the state actor has complied with the procedures set forth in the IDEA, and (2) whether the IEP developed pursuant to the IDEA is reasonably calculated to enable

---

[5]In any event, the district court did not appear to rely on Dr. Rostetter's testimony. Dr. Rostetter primarily responded to the ALJ's findings that the June and September 1996 IEPs were procedurally flawed. Nevertheless, without referring to Dr. Rostetter's testimony, the district court agreed with the ALJ, finding the IEPs procedurally inadequate. Thus, any error stemming from the admission of Dr. Rostetter's testimony, or by denying K.C.'s motion to supplement the record, would not have yielded the "substantial prejudicial effect" necessary to warrant reversal. Piamba Cortes, 177 F.3d at 1305; see Drew P. v. Clarke County Sch. Dist., 877 F.2d 927, 931 (11th Cir. 1989) (admission of cumulative evidence was harmless error).

9

the child to receive educational benefit. Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). A procedurally defective IEP does not automatically entitle a party to relief. "In evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect per se." Weiss, 141 F.3d at 994; see also Doe v. Ala. State Dep't of Educ., 915 F.2d 651, 661-663 (11th Cir. 1990) (holding deficiencies failing to impact parental involvement were not sufficient to warrant relief). The ALJ found the June and September IEPs failed to comply with the procedures set forth in the IDEA and failed to provide K.C. with any educational benefit. The district court also found the IEPs to be procedurally flawed, but disagreed with the ALJ's conclusion that the plan failed to provide K.C. with any educational benefit. In so deciding, the district court considered whether:

> (1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and (4) positive academic and non-academic benefits are demonstrated.

Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 253 (5th Cir. 1997).[6]

---

[6]It is unnecessary for us to decide whether these factors constitute the test in this circuit because they are at least as stringent as any standard this court has articulated. E.g., JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1573 (11th Cir. 1991) (discussing the "basic floor of opportunity").

10

"[W]hether an IEP provided a 'free appropriate public education' . . . is a mixed question of fact and law subject to de novo review." JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1571 (11th Cir. 1991). Specific findings of fact are reviewed for clear error. Walker County, 203 F.3d at 1295 n.7. In contrast, the district court conducts an *entirely* de novo review of the ALJ's findings, Rowley, 458 U.S. at 205, and has the discretion to determine the level of deference it will give to the ALJ's findings. Doe, 915 F.2d at 657 n.3.

In the present case, the district court gave great deference to the ALJ's extensive factual findings. The district court disagreed, however, with the ALJ's conclusion that the IEPs (as well as the educational program actually implemented) failed to provide any educational benefit. The district court found the Board clearly developed an individualized program and administered it in the least restrictive environment. It also found the program was implemented in a coordinated, collaborative manner by key stakeholders. The district court found it impossible to address the academic progress component of the final Cypress-Fairbanks factor because of the extremely short period of time K.C. was in school and the difficulty in determining "what effect K.C.'s mother's actions had on K.C.'s progress." Finally, the district court disagreed with the ALJ's conclusion that K.C.'s non-academic progress regressed based on the single incident with the nail. We find persuasive the

11

district court's application of the facts to the <u>Cypress-Fairbanks</u> factors and its conclusion that "the procedural deficiencies in the June and September 1996 IEPs did not impact K.C.'s right to a FAPE." Accordingly, we uphold the district court's decision.

## IV. Conclusion

For the reasons set forth herein, we AFFIRM the decision of the district court vacating the final order of the ALJ and the judgment in favor of the Board.