**J.C., a minor, by and through his next friend, M.C., Plaintiff,**

v.

**SCHOOL BOARD OF ST. JOHNS COUNTY, FLORIDA,**
**Defendant.**

**Case No. 3:14-cv-1225-J-39JBT**

United States District Court,
M.D. Florida,
**Jacksonville Division.**

Signed 09/28/2016

Alice K. Nelson, Nelson Law Group, Tampa, FL, Beverly Brown, Three Rivers Legal Services, Inc., Jacksonville, FL, Jodi Lynn Siegel, Southern Legal Counsel, Inc., Nancy E. Wright, Law Office of Nancy E. Wright, Gainesville, FL, for Plaintiff.

Terry Joseph Harmon, Jeffrey Slanker, Sniffen & Spellman, PA, Tallahassee, FL, for Defendant.

**ORDER**

Brian J. Davis, United States District Judge

This is an action under the Individuals with Disabilities Education Act ("IDEA" or the "Act"), 20 U.S.C. § 1400 *et seq.* It is before the Court on the Motion to Hear Additional Evidence (Doc. 51) filed by Plaintiff J.C., a minor, by and through his next friend, M.C.[1] Defendant School Board of St. Johns County, Florida ("School Board"), responded to the motion, (see Doc. 60), and the matter is ripe for review.

## I. BACKGROUND

### A. Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act provides that children with disabilities must receive a free and appropriate public education in states that receive federal assistance. See 20 U.S.C. § 1412. To comply with the Act, states must first identify students in need of special education then develop for each student an "individualized education program" ("IEP"), which must meet IDEA requirements. 20 U.S.C. § 1414(d)(2)(A). If a parent seeks to challenge the student's IEP or to argue that the student has been denied a free and appropriate public education, the Act entitles the parent to an administrative hearing. 20 U.S.C. § 1415(f)(1)(A); see J.P. v. Cherokee Cnty. Bd. of Educ., 218 Fed.Appx. 911, 913 (11th Cir. 2007) (describing that, "[t]he philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA *before* resorting to the courts to challenge

---

1. On October 19, 2015, the Court granted in part Plaintiff's request in the Motion to Hear Additional Evidence for an extension of time to submit a response to the Motion for Judg- ment on the Administrative Record (Doc. 50) filed by Defendant School Board of St. Johns County, Florida. (See Doc. 52).

the actions of the local school authorities." (quotation marks and citation omitted)).

After the administrative law judge issues a decision, either party may appeal the decision to the United States District Court. 20 U.S.C. § 1415(i)(2)(A). In this appeal, the Eleventh Circuit has explained that, "the Act contemplates that the source of the evidence generally will be the administrative hearing record" and that "[t]he starting point for determining what additional evidence should be received ... is the record of the administrative proceeding." Walker Cty. Sch. Dist. v. Bennett ex rel. Bennett, 203 F.3d 1293, 1298 (11th Cir. 2000) (quoting Town of Burlington v. Dept of Educ. for Com. of Mass., 736 F.2d 773, 790 (1st Cir. 1984)).

### B. Procedural History

On February 8, 2013, J.C., a student born in 1999 and in the midst of his eighth grade academic year, was found eligible to receive special education services under the Other Health Impairment ("OHI") category of the IDEA due to his Attention Deficit Hyperactivity Disorder ("ADHD") diagnosis. (Doc. 15 at 3 ¶ 9, 12 ¶ 48, and 13 ¶ 52); see 20 U.S.C. § 1401 (3)(A)(i) (including "other health impairments" as one of the categories to define a "child with a disability" under the IDEA); see also 34 C.F.R. § 300.8(c)(9)(ii) (defining "other health impairment" as "having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that ... [a]dversely affects a child's educational performance"). That same day, a team "consisting of [J.C.'s] mother, two general education teachers, a special education teacher, [a Local Education Agency] representative, an interpreter of instruction implications of evaluation, [J.C.'s] attorney, the school board's [Exceptional Student Education] director, and the school principal" met and developed an IEP for J.C., as required by the IDEA. (Doc. 15-1 at 12-13 ¶ 21; see Doc. 15 at 12 ¶ 48); 20 U.S.C. § 1414(d).

On January 6, 2014, J.C.'s parent M.C. submitted a request for a due process hearing, alleging that the School Board violated the IDEA by not providing her son with a free and appropriate public education, amongst other alleged violations. (Doc. 15 at 13-14; see Doc. 15-1 at 2). Plaintiff sought tutoring as the form of compensatory education. (Doc. 15-1 at 2). After conducting a final hearing on May 12-14, 2014, the administrative law judge decided in favor of the School Board. See id. at 1, 22–23. In considering "whether a failure on the part of the school district concerning Petitioner's education under his IEP warrants an award of compensatory education," the judge explained that "Petitioner did not meet his burden of proof." Id. at 22. He reasoned further that, "[t]he evidence shows that Petitioner was timely and appropriately evaluated, that a valid IEP was created to address his needs, and that the IEP was implemented by the school district" and did not constitute a basis for finding that the school district committed any of the alleged violations, Id. at 22–23. Specifically, the judge concluded that, "Petitioner's difficulties in school were not proven to be a result of his ADHD diagnosis, or, ultimately, his OHI designation of eligibility." id. at 21.

On October 8, 2014, J.C., by and through his next friend, M.C., submitted his Complaint (Doc. 1) to appeal the final decision of the administrative law judge pursuant to 20 U.S.C. § 1415(i)(2). On January 23, 2015, Plaintiff submitted his disclosures according to Rule 26, Federal Rules of Civil Procedure, in which he noted that "[e]xpert testimony will be utilized as to Plaintiff's needs for compensatory education." (Doc. 60-1 at 2). After the Court granted the parties' joint motion to extend

the discovery deadline to October 16, 2015, (see Doc. 47), Plaintiff filed his Motion to Hear Additional Evidence (Doc. 51) on the new deadline date. The Motion to Hear Additional Evidence seeks to add to the record the testimony of Joseph Calvin Gagnon, Ph.D., a professor in the Special Education Department at the University of Florida. (See Doc. 57-1 at 13).

## II. STANDARD FOR RECEIVING ADDITIONAL EVIDENCE

The Individuals with Disabilities Education Act provides that a reviewing federal court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Despite the use of the word "shall," the Eleventh Circuit has not held that a district court must accept additional evidence upon a party's request. See G.J. v. Muscogee Cty. Sch. Dist., 668 F.3d 1258, 1268 (11th Cir. 2012) (explaining that in an IDEA case, "[a] district court is permitted to accept additional evidence, but is not required to do so."). Rather, the "IDEA specifically provides that the court *may* take additional evidence and may fashion relief that the court deems appropriate." Sch. Bd. of Collier Cty. v. K.C., 285 F.3d 977, 981 (11th Cir. 2002) (quotation marks and citation omitted) (emphasis added).

■ As stated above, the judicial review of an administrative decision is typically limited to the record relied upon by the administrative body. See Walker, 203 F.3d at 1297. In an IDEA case, "some supplementation" may be permitted at the discretion of the trial court, Id. at 1298. The district court may consider particular factors for such supplementation:

■ (1) Gaps in the administrative transcript owing to a mechanical failure, unavailability of a witness, improper exclusion of evidence by the administrative agency, and evidence concerning relevant events subsequent to the administrative hearing;

(2) Not allowing additional evidence to change the character of the hearing from one of review to a trial de novo;

(3) Not allowing a party to undercut the statutory role of administrative expertise;

(4) The unfairness involved in one party's reserving its best evidence for trial;

(5) The reason the witness did not testify at the administrative hearing; and

(6) The conservation of judicial resources.

Id. at 1298 (citing Town of Burlington, 736 F.2d at 790–91). The Eleventh Circuit has concluded that, "[t]he determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of *review* to a *trial* de novo." Sch. Bd. of Collier Cty., 285 F.3d at 981 (quotation marks and citation omitted); see also Marc V. v. N. E. Indep. Sch. Dist., 455 F.Supp.2d 577, 589 (W.D. Tex. 2006) (citing Town of Burlington, 736 F.2d at 790) (concluding that, "[i]n [the] absence of special circumstances, courts should ordinarily exercise that discretion in favor of excluding the belatedly offered evidence.").

■ In deciding upon a motion for judgment on the administrative record in an IDEA case, the district court may grant judgment based on a preponderance of the evidence, even when the parties dispute material facts from the administrative record. G.J. v. Muscogee Cty. Sch. Dist., 668 F.3d at 1267-68 (citing Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313-14 (11th Cir. 2003) (explaining the difference between the standard of review for motions for summary

judgment and motions for judgment on the record)). The court may use its sound discretion to determine the amount of deference to give to the administrative law judge's findings. Walker, 203 F.3d at 1297–98; see L.J. v. Broward Cty. Sch. Bd., 06-61282-CIV, 2008 WL 612881 at *2 (S.D. Fla. Mar. 5, 2008) (noting that "[t]he thoroughness of the [administrative law judge's] findings is a significant factor to be considered in determining how much weight to give" and that "[g]reater deference is usually given in cases where the [administrative law judge] was thorough and careful."). A district court considers the fact-findings of the administrative law judge to be *prima facie* correct. Loren F., 349 F.3d at 1314 n.5.

■ "[A] party seeking to introduce additional evidence at the district court level must provide some *solid justification* for doing so." Atlanta Indep. Sch. Sys. v. S.F. ex rel. M.F., 1:09–CV–2166–RWS, 2011 WL 1321569, at *3 (N.D. Ga. Mar. 31, 2011) (internal citations omitted) (emphasis added); see Sch. Bd. of Collier Cty, 285 F.3d at 981 (describing that a district court looks to the Walker factors to determine whether the movant provided a "solid justification" for permitting additional evidence).

## III. DISCUSSION

Plaintiff requests that the Court allow testimony of Dr. Gagnon on three issues concerning the education of J.C.:

(1) to "explain the relationship of OHI to J.C.'s ADHD and the symptoms associated with the condition";

(2) to "look at the interventions that were provided to J.C., determine whether those interventions were research-based, review the data and observations collected by the Defendant (which should be included in the administrative record)[,] monitor progress, and analyze

whether or not these interventions were effective"; and

(3) to describe "J.C.'s current educational deficits and the services necessary to compensate him for the denial of [free and appropriate public education]."

(Doc. 51 at 2-3 (footnote omitted)). The Court will examine the first and second proposed issues then the third proposed issue.

### A. First and Second Proposed Issues

■ For the first issue, Plaintiff argues that "it would assist the court to have an educational expert testify as to the details of OHI, particularly as it relates to ADHD and the impact of this condition on educationally-relevant symptoms ...." (Doc. 51 at 5-6). He argues further that "[a]n expert could review the record ... to analyze whether or not what they were seeing ... was likely the result of J.C.'s ADHD diagnosis rather than an emotional or motivational issue." Id. at 6 (quotation marks omitted). For the second issue, Plaintiff contends that, "[t]he expert's testimony on this topic will be based on the administrative record which has been submitted to the Court." (Doc. 51 at 7). The Court will analyze the Walker factors as they pertain to the first two proposed additional issues.

1. *Gaps in the administrative transcript owing to a mechanical failure, unavailability of a witness, improper exclusion of evidence by the administrative agency, and evidence concerning relevant events subsequent to the administrative hearing*

In regards to the first two proposed issues, Plaintiff did not direct the Court to gaps in the administrative record or to reasons why Dr. Gagnon or any other witness may not have been available for the administrative hearing. He did not argue that the administrative law judge improp-

erly excluded any evidence pertinent to the first two issues. Plaintiff also did not demonstrate that evidence for the first two proposed issues concerned events that occurred subsequent to the administrative hearing.

2. *Not allowing additional evidence to change the character of the hearing from one of review to a trial de novo*

Allowing Dr. Gagnon to testify to the first two issues would require the Court to readjudicate, rather than review, the record evidence that the administrative law judge analyzed when reaching his decision. A number of psychologists, guidance counselors, teachers, and other essential actors in J.C.'s education testified at the administrative hearing.[2] Due in part to the number of testimonies, the administrative record contains plenteous information about Plaintiff's academic career and his physical and mental conditions. (See Doc. 31 (including 1,760 pages of the administrative record)). The existing evidence includes enough information for the Court to determine whether the School Board provided Plaintiff with a free and appropriate public education.

Consider Dr. Edward C. Taylor's testimony and psychological evaluation of J.C., both of which may be found in the administrative record. When asked in the administrative hearing to comment on how ADHD can impact a student's education generally, Dr. Taylor, a former clinical assistant professor of pediatrics at the University of Florida School of Medicine, (see Doc. 31-15 at 24), responded by explaining that,

[A]ttention disorders often manifest as inconsistent attention and concentration, which affects inconsistent performance in school because the child is not consistently engaged with what is going on. Attention disorders, more often than not, present as difficulties with the executive symptom, which is your planning, organizing supervisory system. So a child with an attention disorder can have a difficult time being strategic in their learning and in their problem solving, managing time, managing tasks. So, again, attention disorders manifest difficulty with productivity, not capacity, if you would.

(Doc. 31-15 at 25; see Doc. 15-1 at 5 ¶ 5 (featuring the administrative law judge's discussion of the effects of attention disorders such as ADHD)). In addition to providing a general description of attention disorders in his testimony, Dr. Taylor's psychological evaluation of J.C. explains that, "there is some cognitive efficiency present but it is not complicated by challenges with the executive skills or nonverbal reasoning," (Doc. 31 at 133). He added that, "[t]his is a very important finding which suggests that the Attention Disorder [of J.C.] is narrowly defined and it[s] effects limit lower level processing inefficiency, not higher level problem solving." Id.

The administrative record also includes the "Statement of Physical/Medical Dis-

---

**2.** The administrative law judge's decision described that,

At the final hearing, Petitioner called 11 witnesses: Dr. Edward Taylor, psychologist; Petitioner's mother; Valerie Golden, guidance counselor; Debra Allred, assistant principal; Kimberly Drayton, nurse; Patrice Izzo, bus driver; Melissa Weeks, assistive technology specialist; Jewel Johnson, principal of Petitioner's Middle School [ ]; Jodi Johnson, exceptional student education (ESE) teacher; Charles Cerrato, ESE teach-

er at Petitioner's High School [ ]; and Petitioner, on his own behalf. . . .
Respondent also called 11 witnesses: Millie Turrentine-Jenkins, retired school psychologist; Liza White, guidance counselor; Rhonda Davis, ESE teacher; Jon Marks, teacher; Susan Woeppel, teacher; Gwynn Paton, teacher; Patti`Meyer Richards, teacher; Joseph Anzelmo, teacher; Christopher Stubbs, teacher; Lisa Bell, ESE director; and Debra Allred.
(Doc. 15-1 at 3).

ability" provided by Alisia Martin, M.D., to the St. Johns County School District on January 8, 2013. (Doc. 31-5 at 28-29). In the statement, Dr. Martin listed J.C.'s "impairment as defined by Florida Statutes" as "Other Health Impairment" and recommended to the school district that, "[J.C.] currently requires accommodations appropriate for ADHD[.]" Id. The record also contains a neuropsychological assessment of J.C. performed by Sari Newman Bernstein, Ph.D., in April 2006. (See Doc. 31 at 102). Dr. Bernstein evaluated J.C.'s attention issues and wrote that, "[t]he patient qualifies for a [statutorily defined education plan] as to address individual needs in the classroom to assist with symptoms related to ADHD." Id. at 105.

Moreover, Dr. Taylor described how his analysis of J.C. contributed to the development of J.C.'s individualized education program. (See Doc. 31-15 at 41).Dr. Taylor said that, "[i]t's my practice to present the findings of an assessment to the school in hopes of integrating their services into a comprehensive plan for [that particular] child." Id. He provided such contributions to an IEP meeting for J.C. conducted on September 23, 2013. See id. at 53.

To summarize, the administrative record includes transcripts and reports about J.C.'s attention disorder and the school system's efforts to provide him an individualized education program and a free and appropriate public education. This record contrasts with the record in Branham v. Government of the District of Columbia, 427 F.3d 7 (D.C. Cir. 2005), a case relied upon by Plaintiff. (See Doc. 51 at 8), In Branham, the Circuit Court for the District of Columbia reasoned that a "paucity" of evidence convinced the lower court that remanding the case and adding to the record would be prudent. 427 F.3d at 12 (describing that, "[t]he record in this case contains none of the required information.").

A dearth of evidence in the administrative record may serve as a compelling reason for a court to admit additional evidence. See, e.g., Gill v. D.C., 751 F.Supp.2d 104, 113 (D.D.C. 2010) (holding that, "[b]ut for counsel's failure to complete the record and provide specifics ... the Hearing Officer might have had enough information to make an award of compensatory education); A.G. v. D.C., 794 F.Supp.2d 133, 141–42 (D.D.C. 2011) (citing Gill and concluding that, "[s]imilarly here ... plaintiff failed to provide the evidence to the Hearing Officer ...") Reid ex rel. Reid v. D.C., 401 F.3d 516, 527 (D C. Cir. 2005) (Henderson, J., concurring) (describing that, "the administrative record is deficient" and that "the district court relied on an inadequate administrative record"). Plaintiff also cites to a Northern District of Georgia case in which the court accepted additional evidence because it rebutted previously admitted evidence. (See Doc. 51 at 8-9); Gwinnett Cty. Sch. Dist. v. A.A., No, 1:09–CV–445–TWT, 2010 WL 2838581, at *2 (N.D. Ga. July 16, 2010) (reasoning that, "[t]he affidavit of [the defendant's] father updates the Court on [the defendant's] reading status *and rebuts supplementary testimony offered by the Plaintiff.*" (emphasis added)).

Neither situation is the case here. The record evidence of 1,760 pages amounts to more than a paucity. The Court has not admitted additional evidence from Defendant that Plaintiff might need to rebut. This administrative record appears sufficiently developed. Importantly, the proposed new evidence would potentially change the character of this Court's hearing from one of review to a trial de novo.

### 3. Not allowing a party to undercut the statutory role of administrative expertise

In regards to the first and second issues, the due respect that the Court gives to

both the administrative law judge and the administrative process weighs against permitting adding Dr. Gagnon's opinions to the record. See Walker, 203 F.3d at 1297 (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)) (explaining that, "the administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities."); see also CP v. Leon Cty. Sch. Bd. Fla., 483 F.3d 1151, 1156 n.4 (11th Cir. 2007) (noting that the district court "has discretion to determine the level of deference it will give to the [administrative law judge's] findings.").

The administrative law judge provided descriptions and analysis of the interventions performed by the School Board. For example, after J.C. received his final marks for seventh grade, the judge described that, "his mother contacted the guidance counselor with concerns about [J.C.'s] development" and "[t]he counselor agreed to increase [ ] interventions with [J.C.] so that he could do better in the upcoming school year." (Doc. 15-1 at 10 ¶ 14). Also, when J.C. entered the eighth grade, the same academic year in which his mother submitted a request for a due process hearing, J.C.'s intervention team continued to meet and monitor his progress. Id. ¶ 15. Allowing Plaintiff to enter additional evidence here would indeed undercut the statutory role of administrative expertise, because the administrative law judge considered evidence relevant to the first two proposed issues from those administrators statutorily charged with the duty to consider and evaluate those issues.

*4. The unfairness involved in one party's reserving its best evidence for trial*

The Court finds questionable the timing of Plaintiff's attempt to add evidence to the administrative record. While filing the Motion to Hear Additional Evidence on the discovery deadline may be procedurally satisfactory, (see Doc. 47 (noting that, "[d]iscovery shall be completed on or before October 16, 2015.")), it indicates to the Court that Plaintiff sought to preserve Dr. Gagnon's testimony for trial and limit Defendant's ability to provide rebuttal evidence. (See Doc. 51 (entered by Plaintiff's counsel at 4:37 PM on Friday, October 16, 2015)); see also Gwinnett Cty. Sch, Dist., 2010 WL 2838581, at *2 (concerning the role of rebuttal evidence in deciding upon permitting additional supplementary evidence in an IDEA case). Moreover, the proposed additional evidence, at least as it pertains to the first two issues, would only broach subjects or analyses that the administrative law judge assessed during his hearing. Given the timing and the purported substance of the supplemental evidence as it pertains to the first two proposed issues, adding the supplemental evidence at this juncture would be both unfair to Defendant and unnecessary to the Court's analysis.

*5. The reason the witness did not testify at the administrative hearing*

Plaintiff did not provide the Court with a reason why Dr. Gagnon or any other witness did not testify at the administrative hearing.

*6. The conservation of judicial resources*

The Court recognizes that the administrative law judge expended considerable resources in conducting a hearing and deciding upon a voluminous administrative record. The judge examined the various analyses of J.C.'s ADHD and the symptoms associated with the disorder, and he examined the interventions provided by J.C.'s schools. For the first two proposed issues, conducting a trial de novo as opposed to simply reviewing the administrative law judge's decision, as the IDEA contemplates, would expend even more ju-

dicial resources. The Court refuses to do so.

## B. Third Proposed Issue

■ For the third request, Plaintiff argues that, "[b]ecause compensatory education relates to J.C.'s current educational needs, it is appropriate to review data that is only available after the administrative hearing." (Doc. 51 at 8). In doing so, he seeks to offer evidence that would expand the scope of the administrative hearing, in which he only asked for compensatory education in the form of tutoring. (See Doc. 15-1 at 2 ("Petitioner is seeking compensatory education in the form of tutoring (only) from Respondent . . . ." (parenthetical in original)). In this Motion to Hear Additional Evidence, Plaintiff indicates that he would like to request more than just tutoring: the testimony would address "the *services* necessary to compensate him for the denial of [free and appropriate public education]." (Doc. 51 at 3 ¶ 5 (emphasis added)).[3]

Defendant contends that "Plaintiff has not exhausted administrative remedies as to other types of relief and should be precluded from raising issues of compensatory education outside of tutoring before this Court." (Doc. 60 at 9). The School Board also argues that, "those subsequent events are not before this Court" and that "the foundation for Gagnon's opinions on personal education are his personal conclusions that Defendant violated the IDEA after the due process hearing when it provided J.C. inadequate IEPs and failed to implement them." (Doc. 60 at 10).

*1. Gaps in the administrative transcript owing to a mechanical failure, unavailability of a witness, improper exclusion of evidence by the administrative agency, and evidence concerning relevant events subsequent to the administrative hearing*

For the third proposed issue, Plaintiff again does not direct the Court to a gap in the administrative record, the unavailability of a witness, or an improper exclusion of evidence by the administrative agency. The proposed testimony for the compensatory education issue does concern events subsequent to the administrative hearing, but Plaintiff fails to demonstrate the relevancy of those events to the subject matter ruled upon by the administrative law judge.

As stated above, Plaintiff only sought tutoring as the form of compensatory education in the administrative hearing, (see Doc. 15-1 at 2), thereby effectively limiting the purview of the administrative law judge's decision as it pertained to the form of compensatory education that might have been awarded. Examining and ruling upon Plaintiff's proposed evidence regarding compensatory education and other alleged IDEA violations that occurred after the hearing, for which the Court does not have a fully developed administrative record, would effectively ignore the scope of the administrative hearing and the administrative law judge's decision. See Roland M. v. Concord Sch. Comm., 910 F.2d 983, 997 (1st Cir. 1990) (following Town of Burlington and concluding that, "[w]e refuse to reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judi-

---

**3.** The "Expert Report" (Doc. 57-1) submitted by Dr. Gagnon includes several recommendations that go beyond tutoring, including suggestions for "emotional/behavioral interventions" and services "in the areas of physical health, psychiatric and psychological counseling [ ], community experiences, acquisitions of daily living skills, and vocational supports." (Doc. 57-1 at 7, 9).

cial review mechanism into an unrestricted trial de novo.").

Plaintiff exhausted the administrative process for the alleged IDEA violations that occurred prior to the administrative law judge's hearing. Newly alleged violations that occurred *after* the hearing do not change the substance or the character of the determinations and interventions made by the School Board during the case's relevant time period, for which a replete administrative record already exists. To the extent subsequent violations occurred, an additional due process hearing before an administrative law judge would allow Plaintiff to begin to utilize and exhaust the administrative scheme. Because Plaintiff did not demonstrate here how the proposed evidence would be relevant to the Court's review of the record concerning the alleged IDEA violations ruled upon by the administrative law judge, the Court refuses to allow additional evidence for the third issue.

*2. Not allowing additional evidence to change the character of the hearing from one of review to a trial de novo*

The proposed addition would "change the character of the hearing from one of review to a trial de novo," Walker, 203 F.3d at 1298, because the administrative law judge submitted his decision in response to Plaintiff's compensatory education request for additional tutoring and nothing else. (See Doc. 15-1 at 2). The new evidence would require the Court to rule upon an issue that Plaintiff asked the administrative law judge not to reach.

*3. Not allowing a party to undercut the statutory role of administrative expertise.*

The addition here would almost necessarily undercut the administrative law judge's statutory role and his expertise, because Plaintiff requested that the judge limit the potential compensatory education award to tutoring. By not giving the judge

an opportunity to reach the compensatory education issue beyond analyzing the appropriateness of awarding tutoring, Plaintiff's request here would deprive this Court of the administrative law judge's analysis.

*4. The unfairness involved in one party's reserving its best evidence for trial*

As described above regarding the first two proposed issues, the timing and the substance of the evidentiary additions make Plaintiff's Motion to Hear Additional Evidence less persuasive. This would especially be true for the third proposed issue, because Plaintiff wants this Court to consider compensatory education options that he did not want the administrative law judge to consider during the administrative hearing.

*5. The reason the witness did not testify at the administrative hearing*

Again, Plaintiff did not describe why Dr. Gagnon did not testify at the administrative hearing. In regards to the awarding of compensatory education, the Court maintains the ability to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). However, without an explanation as to why Dr. Gagnon could not testify at the administrative hearing and thereby allow the administrative law judge to consider other compensatory education options, the Court deems it improvident to permit supplemental evidence regarding compensatory education here.

*6. The conservation of judicial resources*

Finally, the Court will conserve scarce judicial resources by not allowing the parties to engage in a trial de novo, which would be the case since the administrative law judge only examined the applicability of tutoring as a proper compensatory education award.

By not offering a solid justification for adding to the already voluminous adminis-

trative record, Plaintiff fails to establish why the record requires supplementation. A review of the administrative law decision would not require more information than that which already exists in the record.

Accordingly, it is hereby

**ORDERED:**

1. The Motion to Hear Additional Evidence (Doc. 51) filed by Plaintiff J.C., a minor, by and through his next friend, M.C., is **DENIED**.

2. In light of the Court's decision on the Motion to Hear Additional Evidence, the "Motion to Exclude Opinions of Proposed Expert Joseph Gagnon (Daubert Motion) and Request for Oral Argument" (Doc. 53) is **DENIED** as moot.

3. The parties are **DIRECTED** to meet and confer on or before **October 21, 2016**, to discuss the issues raised in the Motion for Judgment on the Administrative Record (Doc. 50) filed by Defendant School Board of St. Johns County, Florida, doing so in a good faith effort to resolve the issues. The parties are further **DIRECTED** to submit a joint notice on their efforts to resolve the case on or before **October 28, 2016**. The Court defers ruling on the Motion for Judgment on the Administrative Record pending the parties' joint notice.

4. If the parties are unable to resolve the issues in the Motion for Judgment on the Administrative Record (Doc. 50), no later than fourteen (14) days after the required conference, Plaintiff J.C., a minor, by and through his next friend, M.C., may submit a response to the Motion for Judgment on the Administrative Record (Doc. 50).

5. This case is **ADMINISTRATIVELY CLOSED** up to and including **November 4, 2016**, pending the outcome of the required conference.

**DONE** and **ORDERED** in Jacksonville, Florida this 28th day of September, 2016.